

# THE ATTORNEY GENERAL
## OF TEXAS

January 5, 1988

**JIM MATTOX**
**ATTORNEY GENERAL**

Honorable George Pierce
Chairman
Urban Affairs Committee
Texas House of Representatives
P. O. Box 2910
Austin, Texas   78769

Opinion No. JM-838

Re:   Whether police chief may see results of psychological evaluation of police officer given under civil service requirement (RQ-1260)

Dear Representative Pierce:

You have submitted to this office a letter asking:

> Is it a  violation of the  doctor-patient privilege for a qualified psychological examiner to release information on a psychological evaluation of a Police Officer to the Chief of Police if the Officer will not sign a release?

You provided the following background information:

> Currently, civil service law and the collective bargaining agreement in San Antonio allow the Chief of Police to require an Officer to submit to a psychological evaluation or treatment at any time to be performed at the city's expense by a qualified psychologist, psychiatrist, counselor or therapist chosen by the city. However, it is not clear if the Chief is able to obtain information regarding such treatment

or evaluation if the Officer will not sign a release.[1]

Article XXXI is the provision of the collectively bargained agreement to which you referred. It reads almost exactly as you have described it. You have advised us that the kind of psychological evaluation contemplated by this agreement is neither expressly authorized nor expressly forbidden by chapter 143 of the Local Government Code. Acts 1987, 70th Leg., ch. 149, §1, at 1729. Our examination of this section confirms this.

Section 5.08 of the Medical Practice Act, article 4495b, V.T.C.S., provides in relevant part:

> (b) Records of the identity, diagnosis, <u>evaluation</u>, or treatment of a patient by a physician that are <u>created or maintained by a physician</u> are confidential and privileged and may not be disclosed except as provided in this section.
>
> . . . .
>
> (h) <u>Exceptions to the privilege of confidentiality, in other than court or administrative proceedings</u>, allowing disclosure of confidential information by a physician, <u>exist only to the following</u>:
>
> > (1) governmental agencies if the disclosures are required or authorized by law;
> >
> > (2) medical or law enforcement personnel if the physician determines that there is a probability of imminent physical injury to the patient, to himself, or to others, or if there is a

---

1. We understand that you are concerned about the implications of an officer's failure voluntarily to sign a release. We therefore do not reach the issue of whether the city could, as a condition of employment, <u>require</u> an officer to sign such a release.

probability of immediate mental or emotional injury to the patient;

. . . .

(5) any person who bears a written consent of the patient or other person authorized to act on the patient's behalf for the release of confidential information, as provided by Subsection (j) of this section[.]

. . . .

(i) Exceptions to the confidentiality privilege in this Act are not affected by any statute enacted before the effective date of this Act.

(j) (1) Consent for the release of confidential information must be in writing and signed by the patient . . . provided that the written consent specifies the following:

(A) the information or medical records to be covered by the release;

(B) the reasons or purposes for the release; and

(C) the person to whom the information is to be released.  (Emphasis added.)

Your question would implicate section 5.08 if a licensed physician performed the psychological evaluation that you described.  See V.T.C.S. art. 4495b, §1.03(11) (defining "physician").

Your question may also implicate article 5561h, V.T.C.S., which is similar to section 5.08 of the Medical Practice Act.  Among other things, article 5561h provides that

[r]ecords of the identity, diagnosis, evaluation, or treatment of a patient/ client which are created or maintained by a professional are confidential and shall not

be disclosed except as provided in Section 4
of this Act. . . .

V.T.C.S. art. 5561h, §2(b).  The statute defines the
relevant terms as follows:

Sec. 1. (a) 'Professional' means any
person authorized to practice medicine in
any state or nation, or any person licensed
or certified by the State of Texas in the
diagnosis, evaluation, or treatment of any
mental or emotional condition or disorder,
or reasonably believed by the patient/
client so to be.

(b) 'Patient/Client' means any person who
consults, or is interviewed by, a pro-
fessional for purposes of diagnosis, eval-
uation, or treatment of any mental or
emotional condition or disorder, including
alcoholism and other drug addiction.

A person performing the psychological evaluation described
in your question would likely be a "professional" within
this statute.

Crocker v. Synpol, Inc, 732 S.W.2d 429 (Tex. App. -
Beaumont 1987, writ request withdrawn), involved an issue
similar to this one.  At the request of a physician
employed by Synpol, a company employee was required to
undergo a urinalysis to determine if he was under the
influence of illegal drugs.  The company and its employees
were subject to a collectively bargained agreement which
provided that

[f]or the purpose of determining an
employee's physical condition and fitness
for performing his regular job or any to
which he may be assigned, during any period
of employment, the Company may require a
check examination by either the Company
physician or any other reputable physician
selected and paid by the Company.

732 S.W.2d at 431.  After the drug test was performed, and
without the employee's consent, the doctor submitted the
test results to the company.  This prompted the following
discussion by the court:

It is correct, under the collective bargaining agreement, that the company had the right to have the employees undergo certain physical examinations at certain times, but we conclude that this meant that the employees at least acquiesced in these physical examinations and at least the employees knew what was going on and appreciated the fact that they were being examined at the orders of the company. We think there is a strain or string of evidence in this case that Crocker may not have consented, or realized, or appreciated that he was being tested for drugs. . . .

. . . .

Crocker apparently did not give any separate release permitting the doctor to release any confidential communication, or any kind of information, to Synpol, Inc., concerning the urinalysis. . . .

We feel constrained to conclude that a material fact issue was raised under this unique record by Dr. Hamby's reporting the results of the urinalysis to Synpol, Inc. Generally speaking, a physician-patient relationship is, in our state, considered to be a confidential relationship and the communications connected therewith are not intended to be discussed with third parties other than those actually present at the time of the consultation or examination. . . . And this privilege of confidentiality may be claimed by the patient or a representative of the patient acting on the patient's behalf. (Emphasis added.)

732 S.W.2d at 433-34. The court went on to discuss various rules of evidence as well as section 5.08 of the Medical Practice Act. It concluded by remanding the case for trial on the issue of whether the physician breached the patient-physician privilege when he disclosed to Synpol the results of the urinalysis.

The Synpol court devoted much attention to the fact that Crocker did not validly consent to the urine test performed on him. For our purposes, however, the case is

most important because of its discussion of the fact that the physician disclosed the test results to Crocker's employer without a release from Crocker. The plain import of this portion of the case is that employees enjoy the benefit of the patient-physician privilege created by section 5.08 and that a collectively bargained agreement, standing alone, cannot abrogate this privilege.

It has been suggested that the real significance of Synpol lies in the fact that Crocker was unaware that the test was being performed on him and therefore did not effectively consent to the test. The argument is that an individual may validly waive his section 5.08 protection, but that Crocker could not be regarded as having done so given his lack of awareness that the test was being administered. If an employee were to validly consent to a physical examination, it is argued, he should be regarded as having effectively consented to the disclosure of the test results and, therefore, as having waived his section 5.08 privilege.

A person may waive his section 5.08 protection. The statute, however, specifically prescribes the manner in which this may be done. There must be a written waiver of the statutory protection, and this release must contain certain specific information. V.T.C.S. art. 4495b, §5.08(h)(5), (j). A written release is also essential in cases involving article 5561h. V.T.C.S. art. 5561h, §4(b)(4). In view of the specificity of these provisions, we cannot conclude that the patient-physician privilege may be impliedly waived in the manner suggested.

As noted, section 5.08 contains the following relevant exceptions to the patient-physician privilege:

> (h) Exceptions to the privilege of confidentiality, in other than court or administrative proceedings, allowing dis-closure of confidential information by a physician, exist only to the following:
>
> > (1) governmental agencies if the disclosures are required or authorized by law;
> >
> > (2) medical or law enforcement personnel if the physician determines that there is a probability of imminent physical injury to the patient, to

himself, or to others, or if there is a probability of immediate mental or emotional injury to the patient;

. . . .

(5) any person who bears a written consent of the patient or other person authorized to act on the patient's behalf for the release of confidential information, as provided by Subsection (j) of this section[.]

Article 5561h contains similar exceptions. Sections 4(b)(1), (2), (4). In certain circumstances, exception (h)(2) of section 5.08 and its article 5561h counterpart, section 4(b)(2), might be triggered. As for exceptions (h)(1) of section 5.08 and 4(b)(1) of article 5561h, the city of San Antonio is a governmental agency; accordingly, if the disclosure of confidential information to the city by a physician were "required or authorized by law," it would not violate the patient-physician privilege. We have, however, found no "law" authorizing or requiring the disclosure contemplated by your question.

It has been suggested that article 5154c-1, V.T.C.S., pursuant to which this collectively bargained agreement was made, impliedly authorizes such disclosure. The argument is that the statutory patient-physician privilege may be abrogated by a provision in an agreement authorized by article 5154c-1. We disagree.

Section 20 of article 5154c-1 provides in relevant part:

(a) This Act shall supersede all conflicting provisions in previous statutes concerning this subject matter; to the extent of any conflict the previous conflicting statutory provision is hereby repealed; and this Act shall preempt all contrary local ordinances, executive orders, legislation, rules, or regulations adopted by the state or by any of its political subdivisions or agents, such as, but not limited to, a personnel board, a civil service commission, or a home-rule municipality.

(b) <u>Provisions of collective bargaining contracts made pursuant to this Act shall take precedence over state or local civil service provisions whenever the collective bargaining contract, by agreement of the parties, specifically so provides</u>. Otherwise, the civil service provisions shall prevail. Civil service provisions, however, shall not be repealed or modified by arbitration or judicial action; although arbitrators and courts, where appropriate, may interpret and/or enforce civil service provisions.

(c) <u>Nothing contained in this Act shall be construed as repealing any existing benefit provided by statute</u> or ordinance concerning firefighters' or policemen's salaries, pensions, or retirement plans, hours of work, <u>conditions of work, or other emoluments</u>; this Act shall be cumulative and in addition to the benefits provided by said statutes and ordinances. (Emphasis added.)

This provision states that only certain state and local civil service provisions may be superseded by provisions in collectively bargained agreements. Section 5.08 of article 4495b and article 5561h are not such provisions. Absent much more conclusive evidence that the legislature intended this result, we cannot conclude that article 5154c-1 authorizes a collectively bargained agreement to abrogate the physician-patient privilege created by the foregoing statutes.[2] An example of such a clear statement of legislative intent is section 143.081 of the Local Government Code, which provides in part:

---

2. We also note that section 5.08(i) provides, "Exceptions to the confidentiality privilege in this Act are not affected by any statute enacted before the effective date of this Act." Article 5154c-1 was enacted in 1973, eight years before the effective date of section 5.08. Article 5154c-1, therefore, cannot be construed as a "law" within exception (h)(1) of section 5.08.

(a) If a question arises as to whether a fire fighter or police officer is sufficiently physically fit to continue the person's duties, the fire fighter or police officer shall submit to the [Fire Fighters' and Police Officers' Civil Service Commission] a report from the person's personal physician.

In sum, notwithstanding a contrary provision in a collectively bargained agreement, a psychological examiner employed by the city of San Antonio would violate the patient-physician privilege created by section 5.08 of the Medical Practice Act and by article 5561h if, without a signed release from the police officer, he disclosed to the Chief of Police the results of a psychological examination which he administered to the officer. An exception would exist if the facts justified disclosure under exception (h)(2) of section 5.08 of article 4495b or subsection 4(b)(2) of article 5561h.

## S U M M A R Y

Unless the facts warrant the application of exception (h)(2) of section 5.08 of the Medical Practice Act, article 4495b, V.T.C.S., or subsection 4(b)(2) of article 5561h, V.T.C.S., a psychological examiner engaged by the city of San Antonio would violate the patient-physician privilege created by section 5.08 and by article 5561h if, without a signed release from the police officer, the physician disclosed to the Chief of Police the results of a psychological examination which he administered to the officer.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jon Bible
Assistant Attorney General